**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re Application Of<br><br>MAN GROUP LIMITED, MAN STRATEGIC HOLDINGS LIMITED, MAN INVESTMENTS LIMITED, AND MAN INVESTMENTS AG,<br><br>Petitioners, For An Order Pursuant To 28 U.S.C. § 1782 To Obtain Discovery For Use In A Foreign Proceeding | Case No. ____________________ |

**MEMORANDUM OF LAW IN SUPPORT OF THE MAN ENTITIES' *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

**WILLKIE FARR & GALLAGHER LLP**

Todd G. Cosenza
Zeh S. Ekono
Stuart R. Lombardi
New York, NY 10019-6099
Telephone: (212) 728-8000
tcosenza@willkie.com
zekono@willkie.com
slombardi@willkie.com

Lawrence E. Slusky (*pro hac vice forthcoming*)
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
lslusky@willkie.com

*Counsel for Man Group Limited, Man Strategic Holdings Limited, Man Investments Limited, and Man Investments AG*

Dated: December 2, 2024

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

NATURE OF PROCEEDINGS AND STATEMENT OF FACTS ..... 3

A. The Parties ..... 3

B. The English Proceedings ..... 4

C. The Limited Discovery Sought ..... 6

LEGAL STANDARD ..... 9

ARGUMENT ..... 10

I. THE APPLICATION SATISFIES ALL STATUTORY REQUIREMENTS UNDER SECTION 1782. ..... 11

A. Wafra "Resides" in the Southern District of New York. ..... 11

B. The Requested Documents Are "For Use" in the English Proceedings. ..... 12

C. The Man Entities Are "Interested Persons" As Parties to the English Proceedings. ..... 13

II. EACH OF THE SECTION 1782 DISCRETIONARY FACTORS STRONGLY FAVORS GRANTING THE APPLICATION. ..... 13

A. Wafra Is Not a Participant in the English Proceedings. ..... 14

B. English Courts Are Generally Receptive to Section 1782 Relief. ..... 15

C. The Application Comports with English Proof-Gathering Restrictions. ..... 16

D. The Man Entities' Narrow, Targeted Discovery Requests are Neither Unduly Intrusive nor Burdensome. ..... 18

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 507 Summit*,
No. 23-mc-00427, 2024 WL 81842 (S.D.N.Y. Jan. 8, 2024) .......... 13

*In re al Ibrahim*,
No. 22-mc-00192, 2022 WL 18674434 (C.D. Cal. Oct. 31, 2022) .......... 16

*In re Batbold*,
No. 21-mc-00218, 2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021) .......... 10, 16

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) .......... 12, 14

*Concord Boat Corp v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) .......... 18

*In re Boustany*,
No. 23-mc-00027 (S.D.N.Y. Jan. 31, 2023) (Order) .......... 11

*In re Del Valle Ruiz*,
342 F. Supp. 3d 448 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019) .......... 11

*In re Estate of Tillman v. City of N.Y.*,
345 F.R.D. 379 (E.D.N.Y. 2024) .......... 18

*In re Eurasian Nat'l Res. Corp.*,
No. 20-mc-00312 (S.D.N.Y. Sept. 9, 2020) .......... 11

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) .......... 15

*In re Gorsoan Ltd.*,
No. 13-mc-00397, 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) .......... 15

*In re Grupo Qumma, S.A. de C.V.*,
No. M 8-85, 2005 WL 937486 (S.D.N.Y. 2005) .......... 9

*Gushlak v. Gushlak*,
486 F. App'x 215 (2d Cir. 2012) .......... 3

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) .......... *passim*

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
62 F. Supp. 3d 358 (S.D.N.Y. 2014)....................10, 16

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)....................12, 13

*In re Metallgesellschaft AG*,
121 F.3d 77 (2d Cir. 1997)....................13

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
No. 08-cv-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)....................14

*In re Niedbalski*,
21-mc-00747, 2023 WL 5016458 (S.D.N.Y. May 8, 2023)....................17

*In re Nix v. Emerdata Ltd.*
[2022] EWHC 718 (Comm)....................15

*Nokia Corp v Interdigital*
[2004] EWHC 2920 (Pat)....................17

*In Re Porsche Auto. Holding*,
No. 15-mc-00417, 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016)....................2, 11, 12

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*,
No. 05-cv-6298, 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006)....................18

*In re Salem*,
No. 24-005, 2024 WL 3026670 (S.D.N.Y. June 17, 2024)....................16

*In re SBK Art LLC*,
No. 24-mc-00142, 2024 WL 2941157 (S.D.N.Y. May 6, 2024)....................12, 13

*South Carolina Insurance Co. v Assurantie Maatschappij "de Zeven Provincien" N.V.* [1987] A.C. 24....................17

*In re SPS I Fundo de Investimento de Ações – Investimento No Exterior*,
2024 WL 917236 (S.D.N.Y. Mar. 4, 2024)....................11

*In re Tel. Media Grp. Ltd*,
No. 23-mc-00215, 2023 WL 5770115 (S.D.N.Y. Sept. 6, 2023).................... *passim*

*In re Temp. Servs. Ins. Ltd.*,
No. 09-mc-00048, 2009 WL 2843258 (W.D.N.Y. Aug. 28, 2009)....................13

*The Public Institute for Social Security v. Al Wazzan and Others*
[2024] EWHC (Comm) 480....................9, 17

*In re Top Matrix Hldgs. Ltd.*,
No. 18-mc-00465, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ........ 14

*In re Ulmans*,
No. 23-mc-00023, 2023 WL 3853703 (S.D.N.Y. Apr. 20, 2023) ........ 18

*In re Watkins*,
No. 24-mc-00023, 2024 WL 4264900 (S.D.N.Y. July 26, 2024) ........ 15

*Yukos Fin. v. Lynch*
[2019] EWHC (Comm) 2621 ........ 16

*ZF Automotive U.S., Inc. v. Luxshare, Ltd.*,
596 U.S. 619 (2022) ........ 12

**Statutes**

28 U.S.C. § 1782 ........ *passim*

**Other Authorities**

FED. R. CIV. P. 26(b) ........ 18

## PRELIMINARY STATEMENT

Man Group Limited ("MGL"), Man Strategic Holdings Limited ("MSHL"), Man Investments Limited ("MIL"), and Man Investments AG ("MIAG") (collectively, the "Man Entities")[1] request authorization from this Court (the "Application") pursuant to 28 U.S.C. § 1782 to issue a narrowly-tailored subpoena (the "Proposed Subpoena") seeking discovery for use in consolidated civil proceedings in England (the "English Proceedings"). Those ongoing proceedings were brought against the Man Entities and over thirty other defendants in the High Court of Justice of England and Wales by the Kuwaiti State pension fund, the Public Institution for Social Security (the "Pension Fund").

The English Proceedings are based, in part, on spurious allegations by the Pension Fund that the Man Entities were aware of corrupt payments allegedly made by Mohamad El Ghazzi ("El Ghazzi")—a third-party intermediary—to Fahad Maziad Rajaan Al Rajaan ("Al Rajaan")—the late former Director General of the Pension Fund—in exchange for Al Rajaan authorizing or exercising influence over the Pension Fund's decision-making to invest in Man's products. The Pension Fund further alleges that MIAG made payments to El Ghazzi with the knowledge that El Ghazzi would then share a portion of those payments with Al Rajaan. The Man Entities deny the Pension Fund's allegations of wrongdoing. Any payments MIAG made to El Ghazzi were executed pursuant to a valid intermediary agreement between El Ghazzi and MIAG for the purpose of promoting the sale of investments in return for incentive commissions on each such sale. These arrangements were in line with MIAG's business model. At no point did the Man Entities have any knowledge of El Ghazzi's alleged payments to Al Rajaan.

---

[1] For clarity, this memorandum uses the term "Man" to refer generally to the Man Entities and/or their affiliates where such distinctions are not relevant to this Application.

The English Proceedings are scheduled to begin trial in March 2025 with a case management hearing on discovery issues scheduled for December 18, 2024. However, certain documents of critical importance to key elements of the Man Entities' defense have not yet been produced by the Pension Fund. The inadequate discovery already provided indicates that the Pension Fund *knew about, or suspected and turned a blind eye to, Al Rajaan's alleged wrongdoing*.

Moreover, the evidence that the Man Entities have obtained to date indicates that a wholly-owned U.S. subsidiary of the Pension Fund, Wafra Inc. ("Wafra"), has documents and other information in its custody, possession, or control that are relevant to the Pension Fund's knowledge of Al Rajaan's wrongdoing. Such documents and information are expected to reveal the Pension Fund's own negligence and inaction in the face of clear evidence of misconduct by Al Rajaan and that the Pension Fund is either time-barred from bringing claims against the Man Entities or that the Pension Fund's own contributory fault extinguishes or diminishes the Pension Fund's claim against the Man Entities.

As a result, the Man Entities petition this Court for leave to issue the Proposed Subpoena[2] to obtain a narrow and targeted set of documents that relate to the Pension Fund's knowledge of Al Rajaan's wrongdoing, including the Pension Fund's approval of substantial payments made to Al Rajaan *by Wafra itself*, all of which is essential to the Man Entities' defense. The Application satisfies all statutory and discretionary factors under Section 1782. *See In re Tel. Media Grp. Ltd*, No. 23-mc-00215, 2023 WL 5770115, at *2 (S.D.N.Y. Sept. 6, 2023) (granting the application for use in an English civil action after finding all factors were satisfied). And good cause exists here for *ex parte* and expedited relief. *See In Re Porsche Auto. Holding*, No. 15-mc-00417, 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016) (granting applicant's request for expedited relief seeking

[2] All exhibits referenced herein are attached to the Declaration of Peter Burrell ("Decl.").

documents where the applicant's deadline in the underlying foreign proceeding was a month away and ordering the discovery target to respond to the subpoena within two weeks of service); *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (noting "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*").

Accordingly, the Man Entities respectfully request that this Court grant the Application and authorize the issuance of the Proposed Subpoena consistent with the schedule set forth in the accompanying Proposed Order.

## NATURE OF PROCEEDINGS AND STATEMENT OF FACTS

### A. The Parties

Petitioners Man Entities are member entities of an industry-leading global investment firm, whose ultimate parent is listed on the London Stock Exchange. (Decl. ¶ 6.) MIL was at all material times a United Kingdom-incorporated regulated entity that operated as an investment manager to funds set up by Man for investments in, among other things, financial products known as structured products (the "Man Structured Products"). (*Id.* ¶ 7.) The Man Structured Products are intended to provide investors with a return based on exposure to various underlying assets and investment strategies within a single pre-packaged investment.[3] (*Id.*) MIAG was at all material times a Swiss entity that operated as a marketing advisor and/or introducing broker in relation to Man's investments. (*Id.* ¶ 8.) Until November 2012, MIL and MIAG were ultimately owned by MSHL, a holding company incorporated in the United Kingdom. (*Id.* ¶ 9.) MGL (formerly Man Group Plc) is an entity incorporated in the United Kingdom that was the ultimate parent of MIL and MIAG between November 2012 and May 2019. (*Id.*)

[3] For the avoidance of doubt, MIL did not provide investment management services to investors in the Man Structured Products. (*Id.*)

From at least as early as 1993, Man's marketing of investment products was substantially reliant on a network of intermediaries such as banks, independent financial advisors, and other asset managers, who marketed and promoted the products and serviced investors in respect of them. This was known as Man's distribution network. (*Id.* ¶ 10.) These intermediaries, including El Ghazzi, typically contracted with and were paid their respective commissions by MIAG. (*Id.*)

Respondent Wafra is a New York-headquartered investment firm[4] and a wholly-owned subsidiary[5] of the Pension Fund, the claimant in the English Proceedings. (*Id.* ¶¶ 11–12.) Wafra is registered as an investment adviser with the U.S. Securities and Exchange Commission and operates as a U.S.-based asset management company. (*Id.* ¶ 12, Ex. 2) (Wafra's Form ADV filed May 7, 2024). Wafra is *not* a party to the English Proceedings. (*Id.* ¶ 12.)

**B. The English Proceedings**

The underlying English Proceedings relevant to the Application are consolidated as *Public Institution for Social Security v. Al Wazzan and Others*, CL-2019-000118, in the High Court of Justice of England and Wales. (Decl. ¶ 4.) This is a consolidated action originally brought against the Man Entities and over thirty other defendants, including the representative of Al Rajaan's estate. (*Id.* ¶ 15, Ex. 5.)

In its filings, the Pension Fund alleges that its former Director General, Al Rajaan, received secret and unlawful payments to authorize or influence the investments made by the Pension Fund into thirty-five of the Man Structured Products between 1996 and 2012. (*Id.* ¶ 16.) In summary,

---

[4] *See* Wafra website, https://www.wafra.com/ ("Wafra is a New York headquartered alternative investment firm").

[5] Upon information and belief, the Pension Fund is the beneficial owner of 100% of Wafra InterVest Corporation ("WIC"), which in turn owns 100% of Wafra. (*Id.* ¶ 13, Ex. 4.) It is the Man Entities' understanding that WIC is managed by a board of directors based in Kuwait, and these directors are also senior executives of the Pension Fund. Moreover, upon information and belief, the former Chairman of WIC at the time of the December 2015 Letter (as defined below) (Hamad Mishari Al-Humaidhi) was also serving as the Director General of the Pension Fund. (*Id.* ¶ 14.)

the Pension Fund alleges that El Ghazzi, who was an intermediary for MIAG, and who is also a named defendant in the English Proceedings, made payments to Al Rajaan (knowing his position of Director General at the Pension Fund) to authorize or influence the Pension Fund to make investments in the Man Structured Products.[6] (*Id.*)

No evidence in the English Proceedings suggests Al Rajaan's authorization or influence was the reason for El Ghazzi's alleged payments to Al Rajaan. (*Id.* ¶ 20.) Nor is there evidence to suggest that the Man Entities had knowledge of El Ghazzi's alleged payments to Al Rajaan. (*Id.*) Rather, evidence suggests that the Pension Fund, having suffered over $1 billion of losses in speculative options trading, chose instead to invest in the Man Structured Products because of the commercial advantages of those products to the Pension Fund. (*Id.*) And the testimony adduced from fourteen witnesses who worked for Man during the relevant period confirms that Man had no such knowledge. (*Id.* ¶ 21.)

None of this is surprising. The Pension Fund's case against the Man Entities is predicated entirely on speculation. While the Man Entities do not deny that MIAG made lawful payments to El Ghazzi, such payments were legitimate commission payments for his intermediary services. Furthermore, the Man Entities have always maintained, and continue to maintain, that they had no knowledge that El Ghazzi made the alleged payments to Al Rajaan. (*Id.* ¶ 20.)

The same cannot be said for the Pension Fund. There is strong evidence that the Pension Fund knew as early as the 2000s of Al Rajaan's misconduct, including that he was receiving unlawful payments. (*Id.* ¶ 22.) In 2008, for example, one of the Directors of the Pension Fund

---

[6] The Pension Fund pleads in the English Proceedings that it first learned that there was a flow of commission payments from Man to the account of El Ghazzi on June 8, 2017. (*Id.* ¶ 17, Ex. 6.)

filed a formal criminal complaint against Al Rajaan with the Kuwaiti Public Prosecutor.[7] (*Id.* ¶ 23, Ex. 7.) And, by May 1, 2012, the Swiss Office of the Attorney General launched an investigation into allegations that Al Rajaan was involved in a money laundering scheme.[8] (*Id.* ¶ 24.) Both of these incidents demonstrate that the Pension Fund knew that Al Rajaan was engaging in misconduct.

The English Proceedings are set to go to trial in March 2025 and are expected to last around nine months. (*Id.* ¶ 19.) A final discovery-related case management hearing is scheduled for next month on December 18, 2024, where the parties are expected to update the court regarding outstanding matters in dispute. (*Id.*) These imminent deadlines impose a pressing need for the discovery requested here. (*Id.*)

### C. The Limited Discovery Sought

The Proposed Subpoena to Wafra represents a targeted set of six narrowly-tailored requests for production of documents relating to (among other things) bribery, corruption, or receipt of improper payments by Al Rajaan and the Pension Fund and Wafra's knowledge thereof. (*Id.* Ex. 1.) This discovery is essential to the Man Entities' defense in the English Proceedings. (*Id.* ¶ 29.) In particular, information relating to the Pension Fund's own awareness of Al Rajaan's wrongdoing shows that (i) the Pension Fund's claim against the Man Entities is time-barred, and/or

---

[7] The criminal complaint included allegations of improper conduct by Al Rajaan with respect to certain of the Pension Fund's purchases in the late 1980s such as its investments in the Swiss Company OMNI, the Italian Company IFIL, and Hartman & Braun. Documents produced by Al Rajaan's estate as part of the English Proceedings show that Wafra's current CEO, Fawaz Al Mubaraki, personally executed these payments on behalf of the Pension Fund for some of these purchases. (*Id.* Ex. 7.)

[8] Following the receipt of documents from Al Rajaan's estate pursuant to discovery in the English Proceedings, the Pension Fund confirmed that key emails sent to and from Sheikh Abdullah Jaber Al Ahmed Al Sabah, Al Rajaan's nephew and now the former Deputy Director General for Investment Affairs at the Pension Fund, were not in its records. The missing emails had only been discovered by cross-reference to the Swiss Office of the Attorney General's files. (*Id.* ¶ 24.)

(ii) the Pension Fund's own significant contributory fault extinguishes or diminishes its claims against the Man Entities. (*Id.* ¶ 29.)

Specifically, in September 2015, the Pension Fund wrote to Wafra requesting information related to the Pension Fund's investments which were managed by Wafra. (*Id.* ¶ 27.) On December 23, 2015, Wafra wrote to the Pension Fund (the "December 2015 Letter") and confirmed that various Wafra entities made payments to Al Rajaan totaling $36,888,189 between 1991 and 2014. (*Id.* ¶ 27, Ex. 4.) The December 2015 Letter states that Wafra understood that the Pension Fund *knew* about these compensation arrangements with Al Rajaan. (*Id.* Ex. 4) ("[Wafra] herein confirms knowledge of certain management and performance related compensation, paid by Wafra InterVest Corporation, [Wafra's] parent company, and Wafra Funds, to the former Chairman [Al Rajaan]. It is [Wafra]'s understanding that the compensation arrangements were and are known by the [Pension Fund]").[9] Indeed, the December 2015 Letter suggests that *the Pension Fund itself was aware of and approved* significant payments by Wafra to Al Rajaan. (*See id.* Ex. 4.)

Although the English Proceedings commenced in 2019, the Pension Fund made its first production—comprising 70,000 documents (the majority of which contained no metadata)—to the Man Entities on July 28, 2023. (*Id.* ¶ 26.) Review of those documents made clear that Wafra is an important custodian of highly relevant evidence, particularly relating to the key question of the Pension Fund's knowledge of Al Rajaan's wrongdoing. (*Id.*) The Man Entities have undertaken extensive efforts to obtain this information, including by requesting that Wafra provide voluntary disclosure. (*Id.* ¶ 32–41.)

---

[9] According to the Pension Fund's own case, Wafra was involved, at least to some extent, with another allegedly corrupt scheme involving Al Rajaan and the Swiss bank Banque Pictet & Cie. (*Id.* ¶ 25.)

On August 7, 2024, the Man Entities wrote to the Pension Fund seeking disclosure of certain Wafra documents referenced in the December 2015 Letter, together with details of any payments made by Wafra to Al Rajaan (and the Pension Fund's approval of such payments) (the "UK Requests"). (*Id.* ¶ 32, Ex. 10.) The Pension Fund responded on September 10, 2024, stating that it would ask Wafra to provide it with documents responsive to the UK Requests. (*Id.* ¶ 33, Ex. 3.) Critically, in responding to these voluntary requests, the Pension Fund has expressly informed the Man Entities that the information of the type sought in the Application is "*held by Wafra*." (*Id.* ¶ 31, Ex. 9) ("the detailed information that you are seeking is not within the [Pension Fund]'s records . . . but rather is information held by Wafra"); (*Id.* ¶ 13) ("Wafra is the *most obvious and most reliable source* of the information sought") (emphasis added).

After nearly a month of further delay, the Man Entities sent another letter to the Pension Fund on October 8, 2024. (*Id.* ¶ 34, Ex. 11.) The Pension Fund confirmed on October 17, 2024, that Wafra had not yet engaged with its request for discovery of documents. (*Id.* Ex. 9) ("We confirm . . . that we have already written to Wafra and confirm that the requests made are sufficiently broad to cover [the documents the Man Entities requested]"). The Man Entities therefore wrote again on October 29, 2024 requesting an update and indicating that, in the absence of substantive engagement from the Pension Fund, the Man Entities would prepare a discovery application so that the information could be obtained directly from Wafra in the United States. (*Id.* ¶ 36, Ex. 12.) On November 5, 2024—nearly three months after the Man Entities' requests—the Pension Fund confirmed that it had received a tranche of documents from Wafra that it was reviewing and intended to produce any documents relevant to the UK Requests within two weeks, by November 19, 2024. (*Id.* ¶ 37, Ex. 13.) The Pension Fund did not produce any documents on November 19, 2024. (*Id.* ¶ 38, Ex. 14.)

On November 20 2024, the Pension Fund produced eighty-seven documents (the "UK Production"). (*Id.* ¶ 39, Ex. 15.) The Man Entities' review of the UK Production is ongoing, but it is already apparent that it fails to satisfy the UK Requests and the Proposed Subpoena's document requests. If anything, the UK Production confirms that Wafra holds an extensive repository of unique documents of fundamental importance to the English Proceedings. (*Id.* ¶ 40.)

The Pension Fund's delay in voluntarily providing these materials in response to the Man Entities' good-faith requests necessitates this Application and requires the Man Entities to seek expedited relief in this Court under Section 1782 to obtain key discovery from Wafra in time for it to be used at trial in the English Proceedings.[10]

## LEGAL STANDARD

Section 1782 requests present two inquiries: "first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so." *In re Grupo Qumma, S.A. de C.V.*, No. M 8-85, 2005 WL 937486, at *1 (S.D.N.Y. 2005). There are three core statutory requirements under 28 U.S.C. § 1782: (i) the discovery target is a resident in the jurisdiction in which the application is made; (ii) the targeted materials are for use in a foreign proceeding; and (iii) the applicant is an "interested person" in the foreign proceeding. When the statutory factors are satisfied, a court considers the discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004): (i) whether the discovery target is a participant in the foreign proceeding; (ii) the nature of the foreign tribunal;

[10] The Court in the English Proceedings has previously held that it cannot order the Pension Fund to produce Wafra's documents, because such documents are not within the Pension Fund's "control" under relevant English procedural rules. *See The Public Institute for Social Security v. Al Wazzan and Others* [2024] EWHC (Comm) 480. (*Id.* ¶ 41, Ex. 16.)

(iii) the purposes behind the application; and (iv) the burden of producing the documents sought. *Id.* at 264–67.

**ARGUMENT**

Courts in this Circuit have routinely granted discovery under Section 1782 for use in England's court system. *See, e.g.*, *In re Tel. Media Grp. Ltd.*, No. 23-mc-00215 (S.D.N.Y. July 6, 2023) (court order permitting service of subpoenas under Section 1782); *In re Batbold*, No. 21-mc-00218, 2021 WL 4596536, at *1 (S.D.N.Y. Oct. 6, 2021) (granting Section 1782 application to be used in underlying proceedings in the High Court of Justice of England and Wales); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 368 (S.D.N.Y. 2014) (denying motion to quash subpoenas issued under Section 1782 for use in an English proceeding). This Court should likewise grant the Man Entities' Application and provide the Man Entities with the judicial assistance needed to obtain limited discovery for use in the English Proceedings for two reasons.

*First*, the Application meets each statutory element under Section 1782: (i) Wafra maintains its corporate headquarters within this Court's jurisdiction; (ii) the documents are "for use" in the English Proceedings because they will be used to address key issues of limitation and contributory fault at the upcoming trial; and (iii) the Man Entities are parties to (and thus "interested persons" in) the English Proceedings. *Second*, each of the *Intel* factors weighs in favor of granting the Application: (i) Wafra is not a party to the English Proceedings; (ii) courts in England and Wales are receptive to relief under Section 1782; (iii) the Application is not an attempt to circumvent English proof-gathering restrictions; and (iv) the Man Entities' narrow, targeted discovery requests are neither unduly intrusive nor burdensome.

As a result, and given the emergent need for relief created by the Pension Fund's delay, the Man Entities respectfully request that this Court expedite its consideration and granting of the

Application, consistent with routine treatment of time-sensitive Section 1782 applications in this District. *See, e.g.*, *In re Boustany*, No. 23-mc-00027 (S.D.N.Y. Jan. 31, 2023) (granting *ex parte* Section 1782 application within one day of its filing); *In re Porsche*, No. 15-mc-00417 (S.D.N.Y. Dec. 29, 2015) (granting *ex parte* Section 1782 application within six days of its filing and ordering a response to the subpoena within two weeks of its service); *In re Eurasian Nat'l Res. Corp.*, No. 20-mc-00312 (S.D.N.Y. Sept. 9, 2020) (granting *ex parte* Section 1782 application within seven days of its filing).

## I. THE APPLICATION SATISFIES ALL STATUTORY REQUIREMENTS UNDER SECTION 1782.

Section 1782's three statutory requirements are easily met here. Respondent Wafra resides in this District, the documents are "for use" in the English Proceedings, and the Man Entities are "interested person[s]." 28 U.S.C. § 1782. Accordingly, this Court has the authority to grant the Application.

### A. Wafra "Resides" in the Southern District of New York.

The statutory requirement that Respondent "resides or is found" in the District is satisfied here. *See* 28 U.S.C. § 1782. For the purposes of Section 1782, a business entity "resides" in a jurisdiction if, *inter alia*, it has its principal place of business there. *In re SPS I Fundo de Investimento de Ações – Investimento No Exterior*, 2024 WL 917236, at *3 (S.D.N.Y. Mar. 4, 2024); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 454 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019) (finding that a foreign corporation with its principal place of business within the Southern District of New York "resides" within the Southern District of New York). Wafra maintains its corporate headquarters and regularly conducts business in New York, New York, thereby satisfying this element. (*Id.* ¶ 12, Ex. 2 at 1) (listing "principal place of business" on Park Place in New York, New York). Because Wafra is subject to general jurisdiction in the District,

this Court "may order" it to "produce" documents. 28 U.S.C. § 1782(a); *see In re Porsche*, 2016 WL 702327, at *7 (holding that the first statutory factor was satisfied because the respondents all had their principal places of business in the district); *In re SBK Art LLC*, No. 24-mc-00142, 2024 WL 2941157, at *4 (S.D.N.Y. May 6, 2024) (same).

**B. The Requested Documents Are "For Use" in the English Proceedings.**

Next, the discovery set forth in the Proposed Subpoena seeks information for use in a foreign proceeding. The "for use" requirement is met provided that the requested discovery is relevant to the foreign proceeding, regardless of whether it is admissible in the proceeding. *See Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (employing the "plain meaning" of the phrase "for use"); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (holding that a court should not consider the admissibility of evidence in a foreign proceeding in ruling on a Section 1782 application). A "foreign proceeding" refers to "governmental or intergovernmental" tribunals. *See ZF Automotive U.S., Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 627 (2022).

Here, the High Court of Justice of England and Wales qualifies as a governmental tribunal. *See, e.g.*, *In re Telegraph*, 2023 WL 5770115, at *6 (noting that the intervenor's motion to quash the subpoena ordered under Section 1782 did not contest that the High Court of Justice of England and Wales constitutes a governmental tribunal). And the Man Entities will use the requested documents to demonstrate that the Pension Fund itself was aware of, and permitted, Al Rajaan's wrongdoing, including his receipt of substantial payments from Wafra. Such documents are relevant to at least two key issues in the English Proceedings: (i) whether the Pension Fund's claim against the Man Entities is time-barred, and/or (ii) whether the Pension Fund's own significant contributory fault extinguishes or diminishes its claims against the Man Entities. Without such discovery from Wafra, the High Court of Justice of England and Wales will be

deprived of key evidence central to the issues in dispute, including the extent to which the Pension Fund itself is culpable for the events in relation to which it now seeks relief from the Man Entities (among others).

Thus, the discovery sought here is plainly "for use" within the meaning of Section 1782. *See, e.g.*, *Mees*, 793 F.3d at 298 (finding the "for use" element satisfied because the applicant showed the materials sought were to be employed at some stage of a foreign proceeding).

### C. The Man Entities Are "Interested Persons" As Parties to the English Proceedings.

Finally, there is "no doubt" that the Man Entities, as parties to the English Proceedings, are "included among . . . the interested person[s] who may invoke § 1782." *Intel*, 542 U.S. at 256 (holding that parties to a foreign proceeding are "interested person[s]" within the meaning of Section 1782); *In re 507 Summit*, No. 23-mc-00427, 2024 WL 81842, at *2 (S.D.N.Y. Jan. 8, 2024) ("Petitioners are interested persons because they are parties to the proceeding"); *In re SBK Art*, 2024 WL 2941157, at *4 ("The Application is brought by Petitioner, which currently is an interested party in one of the Foreign Proceedings; it is a plaintiff in the Malta Action"); *In re Temp. Servs. Ins. Ltd.*, No. 09-mc-00048, 2009 WL 2843258, at *2 (W.D.N.Y. Aug. 28, 2009) ("As the plaintiff in the action in the Cayman Islands, [Petitioner] is an interested person").

## II. EACH OF THE SECTION 1782 DISCRETIONARY FACTORS STRONGLY FAVORS GRANTING THE APPLICATION.

Having satisfied all of the statutory requirements, this Court should authorize the issuance of the Proposed Subpoena where, as here, the *Intel* factors favor it. *In re SBK Art*, 2024 WL 2941157, at *3; *Intel*, 542 U.S. at 264–65. As the Second Circuit has advised, "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . . ." *In re*

*Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (cleaned up). Because "pursuit of these twin goals" typically requires "increasingly broad applicability," "[t]he Second Circuit has consistently ruled that it is far better to provide federal court assistance than none at all." *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 08-cv-269, 2008 WL 3884374, at *4 (N.D.N.Y. Aug. 18, 2008) (granting the Section 1782 application); *see also Brandi-Dohrn*, 673 F.3d at 80 (reversing district court's order quashing subpoenas). Each *Intel* factor weighs strongly in favor of granting the Application, and thus this Court should permit the Man Entities to issue the Proposed Subpoena.

### A. Wafra Is Not a Participant in the English Proceedings.

Under the first *Intel* factor, if the discovery target is *not* a participant in the underlying foreign proceeding, then that weighs in favor of granting the application. *Intel Corp.*, 542 U.S. at 264. This is because, if the nonparticipants are "outside the foreign tribunal's jurisdictional reach," a party seeking documents from the nonparticipant may not be able to rely on the foreign tribunal to obtain these documents. *Id.*

Here, Wafra is not a participant in the English Proceedings. Wafra's corporate parent (the Pension Fund) is a "participant to the foreign proceeding," but "is considered [a] separate legal entit[y] . . . for the purpose of Section 1782." *In re Top Matrix Hldgs. Ltd.*, No. 18-mc-00465, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (cleaned up). Correspondence from the Pension Fund and the English Court's order both confirm as much. (*See* Decl. Ex. 3) ("[Wafra InterVest Corporation] is a separate entity from [the Pension Fund]"); (Decl. Ex. 16.) The requested discovery, however, is available within *this* Court's "jurisdictional reach," as Wafra, which the Pension Fund has stated has the requested discovery, is headquartered in New York. (*See id.* ¶ 12.) Thus, for these reasons, the first factor weighs strongly in favor of granting the Application.

### B. English Courts Are Generally Receptive to Section 1782 Relief.

The second *Intel* factor requires the Court to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. The critical inquiry under this factor is whether the foreign tribunal would be receptive to assistance, which weighs in favor of granting the application. *See In re Gorsoan Ltd.*, No. 13-mc-00397, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) (considering only the Cyprus Court's receptivity to Section 1782 relief and finding that the factor weighed in favor of enforcing the subpoenas). The Second Circuit has instructed that district courts should "consider only authoritative proof" that a foreign government would *not* be receptive to Section 1782 relief in assessing this factor. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100–01 (2d Cir. 1995) (reversing the district court's denial of a Section 1782 application because there were "no authoritative declarations by French judicial, executive, or legislative bodies objecting to foreign discovery assistance"); *In re Watkins*, No. 24-mc-00023, 2024 WL 4264900, at *9 (S.D.N.Y. July 26, 2024) ("Respondents have proffered no authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of [S]ection 1782. Accordingly, I believe that the second *Intel* factor supports granting the requested discovery") (cleaned up).

Here, however, "[t]here is ample evidence that courts in the United Kingdom" are receptive to Section 1782 discovery." *In re Tel. Media Grp.*, 2023 WL 5770115, at *8. For example, recently in *In re Nix v. Emerdata Ltd.* [2022] EWHC 718 (Comm), the High Court of Justice of England and Wales indicated that the availability of the Section 1782 process weighed against ordering in England relief that could otherwise be obtained through the Section 1782 process in the United States. *Id.* ¶ 23 (recognizing the availability of Section 1782 relief as "enabl[ing] people to apply for disclosure [discovery] of this sort in assistance of foreign

tribunals . . . which allows the US Court to grant assistance to foreign tribunals—and litigants before such tribunals. It is granted really quite generously"); (Decl. ¶ 49, Ex. 19); *see also Yukos Fin. v. Lynch* [2019] EWHC (Comm) 2621 ¶¶ 7, 65(i); (Decl. ¶ 49, Ex. 20.)

Accordingly, this District, and other district courts, have previously granted Section 1782 applications that seek to adduce discovery for use before the High Court of Justice of England and Wales given the "ample evidence" that English courts are receptive to Section 1782 discovery. *See id.*; *In re Tel. Media Grp. Ltd.*, No. 23-mc-00215 (S.D.N.Y. July 6, 2023) (court order permitting service of subpoenas under Section 1782); *In re Batbold*, No. 21-mc-00218, 2021 WL 4596536, at *1 (S.D.N.Y. Oct. 6, 2021) (granting Section 1782 application to be used in underlying proceedings in the High Court of Justice of England and Wales); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358 (S.D.N.Y. 2014) (denying motion to quash subpoenas issued under Section 1782 for use in an English proceeding); *see also In re al Ibrahim*, No. 22-mc-00192, 2022 WL 18674434, at *1 (C.D. Cal. Oct. 31, 2022). Thus, for these reasons, the second *Intel* factor weighs strongly in favor of granting the Application.

### C. The Application Comports with English Proof-Gathering Restrictions.

Under the third *Intel* factor, if the Section 1782 applicant is seeking documents that the foreign jurisdiction does not *prohibit* from accessing in discovery, that weighs in favor of granting the application. *See In re Tel. Media Grp.*, 2023 WL 5770115, at *8. Because relevant documents are presumptively discoverable under § 1782, the third *Intel* factor is satisfied absent clear evidence that the foreign tribunal actively prohibits the applicant from obtaining the information sought. *See In re Salem*, No. 24-005, 2024 WL 3026670, at *14 (S.D.N.Y. June 17, 2024) (citing *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011)). Nor is there a "quasi-exhaustion

requirement," meaning that an applicant need not first seek the discovery in the foreign tribunal. *See In re Niedbalski*, 21-mc-00747, 2023 WL 5016458, at *6 (S.D.N.Y. May 8, 2023).

As noted above, the court in the English Proceedings previously held that it does not have the power to compel the Pension Fund to produce documents held by Wafra. *See The Public Institute for Social Security v. Al Wazzan and Others* [2024] EWHC 480 (Comm); (Decl. Ex. 16.) The English Court found that the Pension Fund did not control the documents the Man Entities were seeking, and therefore it could not order the Pension Fund to produce documents outside of its control—not because of any proof-gathering restrictions under English law. *Id.* ¶ 166.

There are no restrictions as a matter of English law that would prohibit the Man Entities from obtaining the discovery requested here in the English Proceedings. On the contrary, the English Court takes a permissive approach to obtaining evidence from other jurisdictions for use in litigation in England and Wales, including through the use of the Section 1782 process. For example, in *Nokia Corp v Interdigital* [2004] EWHC 2920 (Pat), the High Court noted that "the court is generally indifferent as to the source of admissible material." *Id.* ¶ 23; (Decl. ¶ 47, Ex. 17.) The House of Lords (now the Supreme Court) of England and Wales also recognized this in *South Carolina Insurance Co. v Assurantie Maatschappij "de Zeven Provincien" N.V.* [1987] A.C. 24, ¶ 42 acknowledging that "any party preparing his case in the High Court . . . is entitled to . . . try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case." *Id.* (noting that "the civil procedure of the High Court does not, in general, exercise any control over the manner in which a party obtains the evidence which he needs to support his case"); (Decl. ¶ 48, Ex. 18.)

Accordingly, the third *Intel* factor also weighs strongly in favor of granting the Application.

### D. The Man Entities' Narrow, Targeted Discovery Requests are Neither Unduly Intrusive nor Burdensome.

The final *Intel* factor is satisfied where the discovery requests are not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In their analysis, courts apply the familiar standards from domestic civil litigation, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b).

Courts apply a balancing test to determine if a subpoena is unduly burdensome, and inconvenience alone does not justify quashing a subpoena that seeks potentially relevant information. *Concord Boat Corp v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996). Rather, a subpoena is unduly burdensome only when "the burden to the subpoenaed party [outweighs] the value of the information to the serving party." *In re Estate of Tillman v. City of N.Y.*, 345 F.R.D. 379, 384 (E.D.N.Y. 2024). And more often than not, any concerns about the scope of subpoenas can be resolved through responses and objections and the subsequent meet-and-confer process. *See Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05-cv-6298, 2006 WL 2996645, at *1 (S.D.N.Y. Oct. 13, 2006).

Here, the Man Entities seek a narrow and targeted set of documents that are fundamental to their defense in the English Proceedings. (Decl. ¶ 30.) The requests are narrow in scope and important to the fair determination of the English Proceedings, and they seek documents and information that Wafra would be expected to maintain in the ordinary course of business, or that the Pension Fund has already confirmed exists in Wafra's records. *See, e.g.*, *In re Ulmans*, No. 23-mc-00023, 2023 WL 3853703, at *6 (S.D.N.Y. Apr. 20, 2023) (opining that a request for documents maintained in the ordinary course of business was not "unduly burdensome"). The Proposed Subpoena, which contains only six document requests, describes the information sought with great particularity. (*See* Decl., Ex. 30.) Additionally, it should not be burdensome or

disproportionate for Wafra to produce the information sought, particularly where Wafra's corporate parent seeks nearly $1 billion in damages (*id.* ¶ 16, Ex. 5 ¶ 2) and where the Pension Fund's records are demonstrably incomplete (*id.* ¶ 24). Indeed, it is clear that Wafra is capable of collecting and producing documents relevant to the English Proceedings to the Pension Fund. The same should be true with respect to the Man Entities in response to the Proposed Subpoena.

For these reasons, the fourth *Intel* factor also weighs strongly in favor of granting the Application.

## CONCLUSION

For these reasons, the Man Entities respectfully request that this Court grant the Application on an *ex parte* and expedited basis, and authorize the issuance of the Proposed Subpoena consistent with the schedule set forth in the Proposed Order.

Dated: December 2, 2024

Respectfully submitted,
**WILLKIE FARR & GALLAGHER LLP**

/s/ *Todd G. Cosenza*
Todd G. Cosenza
Zeh S. Ekono
Stuart R. Lombardi
New York, NY 10019-6099
Telephone: (212) 728-8000
tcosenza@willkie.com
zekono@willkie.com
slombardi@willkie.com

Lawrence E. Slusky (*pro hac vice forthcoming*)
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
lslusky@willkie.com

*Counsel for Man Group Limited, Man Strategic Holdings Limited, Man Investments Limited, and Man Investments AG*