**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re Application of                                      :
                                                         :
MAN GROUP LIMITED, MAN STRATEGIC          :          24-MC-559 (JHR) (OTW)
HOLDINGS LIMITED, MAN INVESTMENTS        :
LIMITED, and MAN INVESTMENTS AG,           :          **OPINION & ORDER**
                                                         :
                      Petitioners,                      :
                                                         :
For an Order to Obtain Discovery Pursuant to  :
28 U.S.C. § 1782 for Use in a Foreign          :
Proceeding.                                             :
                                                         :
------------------------------------------------------------x

        **ONA T. WANG**, **United States Magistrate Judge**:

I.      **INTRODUCTION**

        On December 11, 2024, Petitioners Man Group Limited, Man Strategic Holdings Limited,

Man Investments Limited, and Man Investments AG (together, "Petitioners") submitted an *ex*

*parte* application (the "Application") seeking an order pursuant to 28 U.S.C. § 1782 ("Section

1782") to subpoena Wafra Inc. ("Wafra," or, "Respondent") for discovery for use in a

proceeding in England before the High Court of Justice of England and Wales (the "English

Proceedings").[1]  (ECF 3).  The Court granted the Section 1782 Petition on January 24, 2025.

(ECF 20).

        Since then, Respondent  has moved to vacate the Court's January 24 Order and to quash

Petitioners' subpoena (the "Man Subpoena").  (ECF 30).  Simultaneously, EFG Bank AG ("EFG,"

_____

[1] The English Proceedings are consolidated under the case name *Public Institution for Social Security v. Al Wazzan and Others*, CL-2019-000118.

or, "Intervenor") has moved to intervene, asking to serve a subpoena seeking substantially the same discovery as Petitioners (the "EFG Subpoena").  (ECF 23).

For the following reasons, the motion to intervene is **GRANTED** and the motion to vacate the January 24 Order and quash the Man Subpoena is **DENIED**.

## II.    RELEVANT BACKGROUND

### A.  <u>Factual History</u>

#### 1.  **The Parties**

Petitioners are member entities of a global investment firm whose parent is listed on the London Stock Exchanges.  (ECF 7 at ¶ 6).  Petitioners rely on intermediaries, such as banks, independent financial advisors, and other asset managers to market and promote Petitioners' financial products.  (ECF 7 at ¶ 10).  Petitioners are defendants in the English Proceedings.  (ECF 7 at ¶ 4).

Respondent is an investment firm headquartered in Manhattan, with an address at 345 Park Avenue, New York, New York 10154-0101, registered as an investment advisor with the U.S. Securities and Exchange Commission, and operating as a U.S.-based asset management company.  (ECF Nos. 7 at ¶ 12, 7-2 at 2 (Wafra's Form ADV, dated May 7, 2024)).  Respondent is a subsidiary of the Pension Fund.  (ECF 7 at ¶ 12).  Respondent is not a party in the English Proceedings.  (ECF 7 at ¶ 12).  (*See also* ECF 7-3 at ¶ 11).

Intervenor is also a defendant in the English Proceedings.  (ECF Nos. 23 at 1, 48 at 3).

#### 2.  **The Allegations in the English Proceedings**

The English Proceedings commenced on February 21, 2019, before the High Court (ECF 33 at ¶ 4), and are set for trial for March 17, 2025.  (ECF 7 at ¶¶ 4, 19).  (*See also* ECF 19).  In the

English Proceedings, the Kuwaiti State pension fund, the Public Institution for Social Security

(the "Pension Fund" or the "English Plaintiff") alleges, *inter alia*, that between 1995 and 2015,

various financial institutions offered secret and illegal commissions to its former Director

General, the late Fahad Maziad Rajaan Al Rajaan, ("Al Rajaan"), totaling nearly $1 billion, in

exchange for promises from Al Rajaan to direct to them the business of managing the Pension

Fund's investments.  (*See* ECF 31 at 7).  As relevant here, the Pension Fund alleges that

Petitioners specifically made or facilitated approximately $155.2 million in corrupt payments to

Al Rajaan between 1996 and 2012 in exchange for investments in Petitioners' products.  (*See*

ECF Nos. 5 at 6–14, 7 at ¶¶ 4–31, 7-4 at ¶¶ 1–2, 30(a), 31(b), 31 at 5–7).  This includes

payments made by one of Petitioners' intermediaries, Mohammed El Ghazzi, ("El Ghazzi"), who

is also a named defendant in the English Proceedings. (ECF 7 at ¶ 16).

Petitioners identify two other key individuals at the Pension Fund whom they believe

were involved in the scheme.  The first of these, Sheikh Abdullah Jaber Al Ahmed Al Sabah,

("Sheikh Al Sabah"), Al Rajaan's nephew, held roles as both the former Deputy Director General

for Investment Affairs at the Pension Fund, and also as a director of Respondent's parent

company (Wafra Intervest Corporation ("WIC")) from October 1998 to November 2018.  (ECF

Nos. 7 at ¶ 24, 7-1, 31 at 15, 45 at 16).  The second, Hamad Mishari Al Humaidhi ("Al

Humaidhi"), also held roles both as a senior executive at the Pension Fund and as a director at

WIC, from September 1990 to February 2019 (ECF Nos. 7-1, 31 at 15, 45 at 16).

As relevant here, in the English Proceedings, Petitioners argue: that there is no evidence

that Al Rajaan's authorization or influence was the reason for El Ghazzi's alleged payments to Al

Rajaan; that there is no evidence that Petitioners knew of El Ghazzi's alleged payments; and

that the Pension Fund knew that Al Rajaan was receiving unlawful payments beginning in the 2000s.  (ECF 7 at ¶¶ 18–21).

In June 2019, a Kuwaiti court found Al Rajaan guilty of crimes relating to these corrupt payments.  (*See* ECF 33-1 at 2, 81 (the "Kuwaiti Judgment")).  (*See also* ECF 7-3 at ¶ 2).  The Kuwaiti Judgment references payments by Wafra to Al Rajaan.  (ECF 33-1 at 9–10).  (*See also* ECF 7-3 at ¶ 2).  In July 2023, the Pension Fund produced approximately 70,000 documents to Petitioners, the majority of which had no metadata, including a letter dated December 2015 that led Petitioners to believe that Respondent could be a custodian of relevant documents. (ECF 7 at ¶¶ 14, 26–28).  That letter has been filed here under seal at ECF 6-2.[2]

### 3.  Petitioners Attempted to Obtain Discovery in England

Petitioners initially attempted to obtain discovery from Respondent voluntarily.  (ECF 7 at ¶¶ 31–40).  On August 7, 2024, Petitioners wrote to the Pension Fund requesting that the Pension Fund disclose: documents relating to Respondent; details of any payments Respondent made to Al Rajaan; and documents reflecting the Pension Fund's approval of such payments. (ECF 7 at ¶ 32).  (*See generally* ECF 7-9 (the "UK Requests")).  On September 10, 2024, the Pension Fund responded that it would ask Respondent to provide documents responsive to the UK Requests.  (ECF Nos. 7 at ¶ 33, 7-3).  On October 8, 2024, hearing nothing for a month, Petitioners followed up with the Pension Fund, requesting again that it ask Respondent to disclose the requested discovery.  (ECF Nos. 7 at ¶ 34, 7-10).  On October 17, 2024, the Pension Fund responded to Petitioners, reporting that Respondent had not yet answered the UK

---

[2] The parties have filed components of their motions provisionally under seal, including certain discovery materials obtained in the English Proceedings.  (*See* ECF Nos. 4, 6, 44, 51, 53).  Motions to seal these documents remain pending.  (ECF Nos. 11, 43, 50).

Request.  (ECF Nos. 7 ¶ 35, 7-8 at ¶¶ 9–10).  On October 29, 2024, Petitioners again requested

an update from the Pension Fund, noting that they intended to seek relief under Section 1782 if

they could not otherwise obtain the requested discovery.  (ECF Nos. 7 at ¶ 36, 7-11).

On November 5, 2024—months after Petitioners circulated the UK Requests—the

Pension Fund confirmed that: it had received documents from Respondent; it was reviewing

them; and it planned to produce any documents relevant to the UK Requests by November 19,

2024.  (ECF Nos. 7 at ¶ 37, 7-12).  On November 20, 2024, the Pension Fund produced 87

documents from Respondent.  (ECF Nos. 7 at ¶ 39, 7-14).  Petitioners attest that this production

was inadequate, but that, inadequate though it is, it indicates that Respondent holds more

documents that would be "of fundamental importance to the English Proceedings."  (ECF 7 at

¶ 40).  The High Court had previously determined that it could not order the Pension Fund to

produce documents in Respondent's custody because the documents sought were not within

the Pension Fund's control under the applicable English law.  (ECF Nos. 7 at ¶ 41, 7-15 at

¶¶ 161–71).

### B. Procedural History

Accordingly, on December 11, 2024, Petitioners filed their Section 1782 Petition in this

Court.  (ECF 3).  On January 24, 2025, the Court issued an Opinion and Order granting the

Petition.  (ECF 20).  Petitioners served the Man Subpoena on Respondent on January 27, 2025,

and a copy of the January 24 Order on January 28, 2025.  (ECF 21 at ¶¶ 3–4).

On February 3, 2025, EFG sought leave to intervene in this action, supporting the

discovery that Petitioners had sought, and seeking permission to serve its own subpoena on

Respondent.  (ECF 23).  The Court directed EFG and Respondent to meet and confer and

propose a briefing schedule regarding EFG's motion, which schedule the Court adopted.  (ECF Nos. 27, 35, 36).  Respondent opposed the motion on February 14, 2025.  (ECF 40).  EFG replied on February 18, 2025.  (ECF 42).

During briefing regarding EFG's motion to intervene, on February 16, 2025, EFG asked Respondent—with Petitioners' consent—to share to any proposals between Petitioners and Respondent regarding the scope of the discovery sought by the Man Subpoena.  (ECF 42-1).  Respondent has apparently refused to grant Intervenor access to these proposals.  (ECF 42 at 2).

### 1. The Man Subpoena

In their Section 1782 Petition, Petitioners requested leave to serve the Man Subpoena to obtain documents and other information in Respondent's custody that Petitioners believe are relevant to the Pension Fund's knowledge of alleged wrongdoing by key players in the payment scheme.  (ECF 5 at 11–16; ECF 7 at ¶ 29).  Petitioners sought documents responsive to three discovery requests[3] relating to allegations of bribery, corruption, or receipt of improper payments by Al Rajaan and the Pension Fund, and Respondent's knowledge of the same.  (ECF Nos. 7 at ¶¶ 29–30, 7-1 (the Man Subpoena)).  (*See also* ECF 45 at n. 8, 10).  The Man Subpoena requests:

- Documents sufficient to identify all payments or remuneration to or for the benefit of Al Rajaan, Sheik Al Sabah, and Al Humaidhi that Respondent made, directed, or was aware of from December 5, 1994 to June 8, 2017 (ECF 7-1 at 12 (Request 1));

---

[3] The Man Subpoena initially included six requests, but Petitioners have since withdrawn Requests Nos. 4, 5 and 6, as well as part of Request 2.  (ECF 45 at n. 8, 10).

- For all payments identified in Request 1: (b)[4] minutes or meeting records concerning payment; (c) documents sufficient to identify who approved the payments, why the payments were made, any requirements or obligations before or after they were made, all participants in the payments, and any written agreements, expectations, or understanding concerning the payments; and (d) all documents concerning any Pension Fund employees' knowledge or suspicion of the payment (ECF 7-1 at 12 (Request 2)); and

- All documents from January 1, 1991 to June 8, 2017 concerning any alleged or potential improper payments involving Respondent's management of assets on behalf of the Pension Fund (ECF 7-1 at 12 (Request 3)).

Petitioners have asserted that the discovery is essential to their defenses in the English Proceedings, namely: (1) that the Pension Fund's claim against Petitioners is time-barred; and (2) that the Pension Fund's own significant contributory fault extinguishes or diminishes its claims against Petitioners. (ECF Nos. 5 at 11–12, 7 at ¶ 29). Based on prior discovery in the English Proceedings, Petitioners believe that Respondent has relevant evidence regarding these issues. (ECF 7 at ¶ 26).

## 2. The EFG Subpoena

Intervenor proposes to serve Respondent with a similar subpoena, representing a subset of the documents that Petitioners seek. (ECF 23). Relevant here, EFG has filed a separate Section 1782 petition of its own in the District of Connecticut, in which it seeks

---

[4] Petitioners have withdrawn Request 2(a), which sought all documents regarding the payments referenced in Request 1. (ECF 45 at n.8).

permission to depose a Wafra executive, Vincent Campagna, regarding essentially these same issues. (ECF 23 at 1). *See In re EFG Bank AG*, 3:25-MC-10 (VAB) (D. Conn. Jan. 17, 2025). Intervenor submits a copy of the EFG Subpoena, styled as a "markup" of the Man Subpoena. (*Compare* ECF 23-1 *with* ECF 7-1). There are three differences between the two:

- Intervenor has replaced all references to Petitioners with references to itself (*see* ECF 23-1);

- Intervenor has removed references to a certain third-party bank (*see* ECF 23-1 at 6–7); and

- With respect to Request 3, Intervenor proposes a new date range for responsive documents, using as its start date "the date that Vincent Campagna joined Wafra" rather than, as Petitioners had, January 1, 1991 (ECF 23-1 at 12).

EFG attests that it intends to use this discovery both (1) to mount their defenses in the English Proceedings and (2) to assist in a planned deposition of Mr. Campagna. (ECF 23 at 1).

### III.  DISCUSSION: THE MOTION TO INTERVENE

Fed. R. Civ. P. 24(a) requires a district court to grant a party's request to intervene as of right where a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(b) *permits* a district court to allow a party to intervene if they have "a claim or defense that shares with the main action a common question of law or fact," so long as intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." When evaluating whether the intervenor has met their burden, the court

"accept[s] as true the non-conclusory allegations of the motion." *In re Tel. Media Grp. Ltd.*, 23-MC-215 (JGLC), 2023 WL 5770115, at *2 (S.D.N.Y. 2023).

To establish intervention as of right under Rule 24(a), an intervenor must: (1) timely file an application; and demonstrate (2) an interest in the action; (3) that their interest may be impaired by the disposition of the action; and (4) that the interest is not adequately protected by the current parties to the action. *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014). When exercising its broad discretion to determine whether an intervenor is entitled to permissive intervention under Rule 24(b), a district court considers the same four factors, as well as whether the proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. Fed. R. Civ. P. 24(b)(3). *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003).

Here, Intervenor has met their burden for permissive intervention under Fed. R. Civ. P. 24(b). First, the intervention is timely; Intervenor promptly attempted to confer with Respondent on January 28, within two business days of the Court's January 24 Order, and, receiving no response, sought leave to intervene on February 3, 2025, four business days later. (ECF Nos. 23 at 2, 23-2, 42 at 2). Second, Intervenor plainly has an interest in the discovery sought here because they are a defendant in the English Proceedings, and thus have a direct, substantial, and legally protectable interest in the outcome of the instant Petition that is cognizable under Rule 24. *In re Costa Pinto*, 21-MC-663 (VEC), 2022 WL 4088012, at *4 (S.D.N.Y. 2022) (citing *Floyd*, 770 F.2d at 1060. Intervenor's parallel Section 1782 Petition in the District of Connecticut seeking the deposition of a Wafra executive likewise creates an interest in the documents sought via this Petition—which Intervenor may well wish to use in that

deposition.  Third, the disposition of the Petition may affect Intervenor's ability to present its

defenses in the English Proceeding because Intervenor intends to use a subset of the discovery

that Petitioners have sought here (*compare* ECF 7-1 *with* 23-1) to present those defenses, as

well as to depose Campagna.  (ECF 23 at 3).  Fourth, and relatedly, although the discovery

Intervenor seeks is indeed a subset of the discovery Petitioners have sought here, Intervenor

intends to mount different defenses in the English Proceedings, an interest that Petitioners—

who are represented by different counsel, who do not intend to depose Campagna, and who

Respondent apparently will not make privy to any discovery proposals between itself and

Petitioners, despite Petitioners' consent—cannot adequately protect here.  (*See* ECF Nos. 42,

42-1).  These are not, as Respondent suggests, the same ultimate objectives, nor is Respondent

itself treating them thusly.  (*See* ECF 40 at 2 (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*,

250 F.3d 171, 179 (2d Cir. 2001)).  Intervenor thus meets their minimal burden to show the

inadequacy of representation under Rule 24.  *Butler, Fitzgerald & Potter*, 250 F.3d at 179 (a

putative intervenor's "burden to demonstrate inadequacy of representation is generally

speaking minimal.").

Intervenor's proposed intervention will not unduly delay or prejudice the adjudication

of the parties' rights.  The Petition has already been granted, and the Court now decides

Respondent's corresponding motion to quash, so no delay can arise.  Respondent's assertion

that allowing EFG to intervene would prejudice Respondent by "allowing EFG to sidestep the

[discovery] mechanism under Section 1782" is unavailing.  (ECF 40 at 3).  Indeed, the insistence

that Intervenor was obligated to file a separate Section 1782 petition (*see* ECF 40 at 2) is frankly

baffling, as is Respondent's insistence that EFG's arguments to the contrary are novel.  They are

not.  *See, e.g., Chevron Corp. v. Berlinger*, 629 F.3d 297, 304 (2d Cir. 2011); *In re Tel. Media Grp. Ltd.*, 2023 WL 5770115, at *4; *In re Costa Pinto*, 2022 WL 4088012, at *4; *In re Hornbeam*, 14-MC-424 (VSB), 2015 WL 1347606, at *3 (S.D.N.Y. 2015) (finding that "permissive intervention is an appropriate means" for a nonparty in a Section 1782 to vindicate its interests).

Because the Court finds that EFG has met their burden under Rule 24(b), the Court need not reach the question of intervention as of right.  *In re Tel. Media Grp. Ltd.*, 2023 WL 5770115, at *2 (citing *In re Reyes*, 19-CV-7219 (AT), 2019 WL 6170901, at *2 n.1 (S.D.N.Y. 2019).

## IV.    DISCUSSION: THE MOTION TO QUASH[5]

Respondent argues that the Man Subpoena should be quashed for four reasons. Respondent argues that two of the four discretionary factors under *Intel Corp. v. Advanced Micro Devices, Inc.*, favor quashing the Man Subpoena.  542 U.S. 241, 264–65 (2004). Specifically, Respondent argues: (1) that the documents requested are within the jurisdictional reach of the High Court in the English Proceedings (ECF 31 at 27–29), and (2) that the subpoena is unduly intrusive and burdensome (ECF 31 at 13–22).  Respondent also argues that (3) Petitioners unduly delayed in seeking the discovery at issue (ECF 31 at 22–25), and (4) that the Petition violated English procedural rules (ECF 31 at 25–27).

For the following reasons, Respondent's motion to quash is denied.

---

[5] Motions seeking discovery, or seeking to quash a discovery request, brought under Section 1782 are non-dispositive under Fed. R. Civ. P. 72(b) and is not on the list of motions exempt from a magistrate judge's jurisdiction.  *See* 28 U.S.C. § 636(b)(1)(A); *In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 340–41 (S.D.N.Y. 2019).  The motion is therefore within the scope of this Court's authority to decide.

A. **The Statutory Factors Are Uncontested**

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Because the statutory factors under are uncontested, the Court will not reconsider its prior determination that they are satisfied. (*See* ECF 20 at 4–5).

B. **The *Intel* Factors Favor Denying the Motion to Quash**

A district court considers four factors when deciding whether to exercise its discretion to grant Section 1782 discovery: (1) whether the target of discovery is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the proceedings' character, and the tribunal's receptiveness to U.S. federal court assistance; (3) whether the application attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp.*, 542 U.S. at 264–65. Courts do not apply these factors "mechanically," but rather "take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). If an applicant satisfies the statutory factors, the district court is free to grant discovery in its discretion. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004). While the district court's discretion is broad, it must be exercised "in light of the twin aims of the statute" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (citations omitted).

Respondent here contests factors (1) and (4).  For the following reasons, I find that both contested discretionary *Intel* factors favor denying Respondent's motion to quash.

### 1.   The Documents Requested Are Not Within the Foreign Court's Jurisdictional Reach

The first *Intel* factor favors denying Respondent's motion to quash because, despite Respondent's partial cooperation in the English Proceedings, they remain beyond the High Court's jurisdictional reach.  *See Intel*, 542 U.S. at 264; *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, 23-MC-208 (JGLC) (GS), 2024 WL 555780, at *8 (S.D.N.Y. 2024), *rep. & rec. adopted* at23-MC-208 (JGLC) (GS), 2024 WL 554302 (S.D.N.Y. 12, 2024).  Because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach," their evidence "may be unobtainable absent [Section] 1782's aid."  *Intel*, 542 U.S. at 264.  Courts in this Circuit do not require that applicants first seek discovery in the foreign tribunal before applying for Section 1782 relief in the United States.  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132–33 (2d Cir. 2017); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) ("[T]his Court has. . .  refused to engraft a quasi-exhaustion requirement onto [S]ection 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court") (internal quotation marks omitted).

Here, the discovery that Petitioners seek from Respondent, who is not a party to the foreign proceeding,[6] is beyond the High Court's jurisdictional reach.  Indeed, as Petitioners

---

[6] The parties do not dispute that, although Respondent is a *subsidiary* of the plaintiff in the English Proceedings, they are not in fact a party to the English Proceedings; parent companies who are participants to foreign proceedings are separate legal entities from their subsidiaries and affiliates for Section 1782 purposes.  *In re Evenstar Master Fund SPC*, 20-MC-418 (CS) (JCM), 2021 WL 3829991, at *11 (S.D.N.Y. 2021), *aff'd* at 2021 WL 5498283 (S.D.N.Y. 2021).

point out, the English Court has already concluded that the Pension Fund does not control

Respondent, and that the English Court thus cannot compel Respondent to produce

documents.  (ECF 45 at 13).  (ECF 7-15 at ¶ 166).  Respondent asserts that, because they have

cooperated in the English Proceedings—specifically, making two employees available to testify

at trial and producing some documents responsive to Petitioners' UK Requests in November

2024—the discovery sought is within the High Court's jurisdiction.  (ECF 31 at 28).

Respondent's voluntary participation is not, however the subject of the instant Petition: the

documents they have withheld are.  Petitioners assert that the documents Respondent has

produced voluntarily are inadequate, and that they believe there remain relevant and

responsive documents in Respondent's custody that they have not produced.  (ECF 45 at 14).

To the extent that Petitioners—or Intervenor—seek additional relevant documents from

Respondent, they had no choice but to seek those materials under Section 1782, as they have

done here.

### 2.  The Subpoena Is Not Unduly Burdensome

The Court previously found that Petitioners' proposed subpoena was not unduly

burdensome.  (*See* ECF 20).  Upon review of the parties' additional submissions in connection

with Respondent's motion to quash under Rule 45(d)(3), (ECF Nos. 31, 32, 33, 44, 45, 46, 47, 48,

49, 51, 52, 53, 54), I again find that the subpoena is not unduly burdensome under *Intel* and the

Federal Rules of Civil Procedure.

Under *Intel*, a court may decline to compel, or limit the scope of, discovery requests

under Section 1782 that are "unduly intrusive or burdensome."  542 U.S. at 265.  Courts assess

whether a subpoena is unduly burdensome by considering factors such as: relevance; the

party's need for the documents; the breadth of the document request; the time-period it

covers; the particularity with which it describes the documents; and the burden imposed.

*Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018).  "General and

conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude

discovery of requested information."  *In re Vale S.A.*, 20-MC-199 (JGK) (OTW), 2021 WL 311236,

at *3 (S.D.N.Y. 2021) (citing *Lindsey v. Butler*, 11-CV-9102 (ER), 2017 WL 4157362, at *3

(S.D.N.Y. 2017)).

When evaluating the scope of a Section 1782 discovery request, courts apply "the

familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *In re BM Brazil 1 Fundo*,

2024 WL 555780, at *16, *rep. & rec. adopted at*, 2024 WL 554302 (quoting *Mees v. Buiter*, 793

F.3d 291, 302 (2d Cir. 2015)).  In general, a party may "obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense."  *Wultz v. Bank of China*

*Ltd.*, 32 F.Supp.3d 486, 491–92 (S.D.N.Y. July 21, 2014) (citing Fed. R. Civ. P. 26(c)(1)).  Rule 26

provides that discovery should be "proportional to the needs of the case, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs

its likely benefit."  Fed. R. Civ. P. 26.  When determining whether a request is proportional, a

court evaluates "the relevance of the information sought—and, in the case of a [Section] 1782

petition, relevance is assessed with regard to the foreign proceeding."  *In re Catalyst*

*Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017).  Rule 45 further protects a non-

party subject to a subpoena, and requires that parties "avoid imposing undue burden or expense" on the target of discovery. *Wultz*, 32 F.Supp.3d at 492 (citing Fed. R. Civ. P. 45(d)(1)).

"[B]ecause the substantive issues presented in the foreign litigation are to be decided by a foreign court applying unfamiliar foreign law, the district court should 'be permissive' when assessing relevance." *In re Tiberius Group AG*, 19-MC-467 (VSB), 2020 WL 1140784 at *7 (S.D.N.Y. 2020) (citing *In re Christen Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008), *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003)). Moreover, because exhaustion of remedies, discoverability, and admissibility are not required, the necessity of the materials being sought is not a precondition for discovery. *In re Top Matrix Holdings Ltd.*, 18-CV-465 (ER), 2020 WL 248716, at *7 (S.D.N.Y. 2020) (citing *Mees*, 793 F.3d at 302). "[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d 291, 302 (2d Cir. 2015) (citing *Euromepa,* 51 F.3d at 1101).

Respondent argues that the Man Subpoena is unduly intrusive and burdensome on three grounds: (1) that the Man Subpoena seeks information that is not relevant to the English Proceedings (ECF 31 at 14–18); (2) that the Man Subpoena seeks documents covering an unreasonably broad time span (ECF 31 at 18–21); and (3) that the Man Subpoena improperly seeks "all documents" regarding wide ranging topics (ECF 31 at 21–22). The Court has reviewed the parties' arguments, and the Man Subpoena at ECF 7-1, and again finds that the document requests therein are not unduly intrusive or burdensome. *See Intel*, 542 U.S. at 265.

a.  *The Discovery Is Relevant*

All of Petitioners' Requests seek discovery that is plainly relevant to the English Proceedings.  Respondent does not dispute—nor could it—that discovery relating to payments involving Al Rajaan are relevant and proportional to the needs of the case; indeed, they are core to the allegations in the English Proceedings, as represented by *all* parties here.  (*See supra* § II.A).  Discovery reflecting payments involving Sheikh Al Sabah and Al Humaidhi (Request Nos. 1 and 2), or indeed any other improper payments between the Pension Fund and Respondent (Request 3), is also relevant and proportional to the needs of the case, to the extent that such documents exist.  As Intervenor correctly notes, Respondent cannot credibly argue that the burden is anywhere close to the $1 billion recovery that its corporate parent seeks in the English Proceedings.  (ECF 48 at 7).

Both Al Sabah and Al Humaidhi served as senior executives alongside Al Rajaan at the Pension Fund—that is, the English Plaintiff, against whom Petitioners must defend claims worth $155.2 million—while the corrupt payment scheme was ongoing.  (ECF Nos. 7 at ¶ 24, 7-1, 31 at 15, 45 at 16).  Both men were also directors at Respondent's parent company during the same time-period, and so may well have received correspondence between the Pension Fund and Respondent regarding the payment scheme.  Respondent is thus a likely custodian of the desired documents, to the extent that they exist.  *See, e.g.*, *In re Ulmans*, 23-MC-23 (GHW)(VF), 2023 WL 3853703, at *6 (S.D.N.Y. Apr. 20, 2023) (finding that a request for documents maintained in the ordinary course of business was not unduly burdensome under Section 1782).  This discovery could well be critical in resolving the issues at stake in the underlying action.  The burden of producing these documents is far outstripped by the likely benefits to

*any* defendant in the English Proceedings, because they are probative of whether the Pension Fund's claims—totaling nearly $1 billion—are time-barred, or otherwise diminished based on the Pension Fund's own contributory fault. (*See* ECF Nos. 5 at 11–12, 7 at ¶ 29).

> b.  *The Time Period Is Proportionate to the Needs of the Case*

The time-period for which Petitioners seek discovery is proportionate to the needs of the English Proceedings. The Man Subpoena is not, as Respondent suggests, a "fishing expedition," but a targeted discovery request, whose proposed time-period is entirely appropriate to the serious allegations in this case. (ECF 31 at 19). Across all three requests, the Man Subpoena seeks discovery spanning 26 years, from 1991 to 2017. (ECF 7-1). But the claims against which they must defend in the English Proceedings concern a corrupt payment scheme taking place from 1995 to 2015, and for which the English Plaintiff seeks nearly $1 billion in damages, $155.2 million of which it seeks to hold Petitioners liable for specifically. (ECF 31 at 7). The seriousness of these claims and the amount in controversy are plainly relevant to the Court's proportionality analysis.[7] *See Pippins v. KPMG LLP*, 279 F.R.D. 245, 255 (S.D.N.Y. 2012).

Moreover, Petitioners have appropriately tailored each request. Petitioners request documents generated no later than June 8, 2017, the precise date when the Pension Fund attests that they had actual knowledge of the payment scheme. (ECF Nos. 7-1 at 12, 45 at 19).

---

[7] Respondent's reliance on *Ex parte Abdalla* is unavailing because the facts are simply not on all fours with the instant Petition. 20-MC-727 (PKC) 2021 WL 168469 (S.D.N.Y. 2021). There, indiscriminate discovery was sought regarding transfers involving 93 different entities over 23 years in connection with a limited commercial dispute that the applicant there valued at $10 million. *Id* at *2. Here, only two entities are involved in the transactions at issue, and the claims are, on their face, worth *one hundred times that*.

As to payments involving Al Rajaan, Sheikh Al Sabah, or Al Humaidhi, and related

documentation (Requests 1 and 2), Petitioners request only documents dating back to

December 5, 1994—concerning a corrupt payment scheme that commenced in 1995.  (ECF 7-1

at 12).  As to documents involving potential unlawful payments by Respondent on the Pension

Fund's behalf (Request 3) Petitioners request materials dating back to January 1, 1991, based

on the December 2015 letter produced in discovery in England that identifies facts that could

be relevant to the Pension Fund's anticipated time bar.  (ECF 45 at 8–9).  In other words,

documents from this time-period may well bear on Petitioners' anticipated defenses that the

Pension Fund's claims against them are time-barred and that the Pension Fund was at fault in

allowing certain payments to go unchallenged.  (ECF 45 at 9).

### c.  Petitioners' Requests for "All" Documents Are Not Overbroad

Under the circumstances of this case, the Man Subpoena's "any and all" language is not

overbroad.  "While those words can give rise to overbroad requests and are sometimes

frowned upon, they are routinely used in discovery requests."  *In re Degens*, 20-MC-237 (JGK)

(RWL), 2020 WL 7360831, at *2 (S.D.N.Y. 2020).  Whether the "'all documents concerning'

terminology renders requests improper is a matter of context and the words that follow."  *Id.*

In the first place, Requests Nos. 1 and 2(c) use the language "sufficient to identify," not

"any and all."  But in any event, as discussed above (*see supra* § IV.B.2.a–b) the "words that

follow" at Requests Nos. 2(b), (d) and 3 are narrowly tailored.  *See In re Degens*, 2020 WL

7360831 at *2.  As for "context," that, too, indicates that the "any and all" terminology is not

here overbroad.  *See id.*  It is true that courts in this District have quashed or modified

subpoenas requesting "any and all" documents or information on the grounds that such

requests were overly burdensome.  *See*, *e.g.*, *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *7; *Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*, 13-CV-6326 (TPG), 2015 WL 728463 (S.D.N.Y. 2015).  But the concerns that are typically implicated in this line of cases are not present here, and Respondent has not troubled to show that they are, offering only conclusory objections untethered from the language or nature of the requests.  The documents sought are not clearly duplicative of what Petitioners—or Intervenor—could obtain from the parties to the English Proceedings, because many of them are documents likely to be only in *Respondent's* custody.  *See Hermitage Global Partners L.P.*, 2015 WL 728463 (quashing subpoena where discovery sought was duplicative).  The discovery sought would not "unnecessarily," but rather might *necessarily* "expose the details of all of [the party's] commercial transactions," which are at the very heart of the allegations in the English Proceedings.  *See In re Tiberius Group AG*, 2020 WL 1140784 at *8-9 .

**C.  <u>Petitioners' Application Was Timely</u>[8]**

Petitioners' December 2024 Section 1782 Petition was timely.  Petitioner—and Intervenor—diligently pursued discovery from the Pension Fund in England, prior to seeking relief in this Court.  Petitioners made good faith efforts beginning in late summer of 2024 and stretching well into the autumn to obtain documents from Respondent without resorting to seeking support in this jurisdiction.  (*See supra* § II.A.3).  After months of negotiating, and

---

[8] Although the parties' discuss the question of delay as ancillary to the *Intel* factors, delay may also be construed as implicating the fourth *Intel* factor, because "[t]he longer the delay in seeking documents ,the great burden is imposed on parties expected to respond to the document requests, who now must attempt to reconstruct events from the distant past."  *In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 73 (S.D.N.Y. 2019) (quoting and affirming *In re Hulley Enterprises Ltd.*, 358 F. Supp. at 351–52).

receiving only 87 documents responsive to the UK Requests, Petitioners finally filed their

Section 1782 Petition, in early December 2024.  Respondent argues that Petitioners' delay is

"extraordinary," and that Petitioners should have at the latest requested these documents in

mid-2023, when the Pension Fund produced the December 2015 letter.  (ECF 31 at 24).  The

Court does not agree.  A one-year delay is not, under these circumstances, "extraordinary."  *Cf.*

*In re Hulley Enterprises Ltd.*, 358 F. Supp. 3d 331, 351–52 (S.D.N.Y. 2019) (finding undue delay

where petitioner had waited six *years* from an allegation first being made in an arbitration to

seek discovery regarding "essentially the same allegation" via Section 1782).  *See also*

*Nascimento v. Faria*, 600 Fed.Appx. 811, 812 (2d Cir. 2015) (affirming district court's finding that

delay of thirteen *years* was "inexcusably untimely"); *Aventis Pharma v. Wyeth*, M-19-70 (DAB)

2009 WL 3754191, at *1 (S.D.N.Y. 2009) (finding that a delay of *five years*, during which the

foreign litigation had proceeded to an appeal was untimely).[9]

### D.  <u>The Court Need Not Reach Whether the Petition Violated English Procedural Rules</u>

The Court need not answer whether Petitioners' submission of the December 2015

letter in support of its Section 1782 Petition violates English Civil Procedure Rule 31.22.[10]  In

---

[9] Respondent's reliance on *In re Application of Elvis Presley Enterprises LLC* is inapposite.  15-MC-386 (DLC), 2016 WL 843380, at *4 (S.D.N.Y. 2016).  There, the Court found that a delay of one year weighed against granting Section 1782 relief where the target of discovery declined to supplement its production in August and the petitioner had waited until December of that same year to seek relief.  *Id.* at *1–2.  Here, Petitioners first requested voluntary disclosure in August, but did not receive a firm no until November 2024, after months of negotiation, and then promptly sought relief in December.  Likewise, the concerns that Respondent raises regarding proximity to trial, relying on *In re DNG FZE*, are not implicated here; there, the Court was concerned that a requested deposition might "have the potential to inject new and destabilizing issues that could delay or complicate the trial," whereas here Petitioners seek documents pertaining to claims and defenses that are at the heart of the foreign proceeding.  23-MC-435 (PAE), 2024 WL 124694, at *1 (S.D.N.Y. 2024).

[10] As noted above, this document was filed, and remains, under seal.  (ECF 6-2).

arguing that Petitioners' submission did violate English law, Respondent cites no laws, regulations, or rules, that might help the Court answer such a question, and offers merely vague and conclusory arguments.  (*See generally* ECF Nos. 31 at 25–27, 32 at ¶¶ 7–17).  Petitioners and Intervenor, of course, contest Respondent's assertions.  (*See generally* ECF Nos. 45 at 26–28, 48 at 8–9).  The Court will not unwisely engage in a "battle-by-affidavit of international legal experts" "to try to glean the accepted practice and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law."  *Euromepa*, 51 F.3d at 1099.

## V.    CONCLUSION

For the foregoing reasons, Intervenor's motion to intervene is **GRANTED** and Respondent's motion to quash the subpoena is **DENIED**.  Intervenor is directed to serve their subpoena by **March 19, 2025**.

The Clerk of the Court is respectfully directed to close ECF Nos. 23 and 30.

**SO ORDERED.**

_____ */s/ Ona T. Wang* _____

Dated: March 13, 2025                              **Ona T. Wang**
        New York, New York                  United States Magistrate Judge